IN THE UNITED STATES COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANA WOOTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00-3280-CV-S-1-ECF |
| | ) | |
| PLEASANT HOPE R-VI SCHOOL | ) | |
| DISTRICT AND MICKI STOUT, | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

This case arises from a high school senior's expulsion from her school's softball team. Defendants Pleasant Hope R-VI School District ("Pleasant Hope") and Micki Stout ("Coach Stout"), (collectively "Defendants"), have moved to dismiss Plaintiff Jana Wooten's ("Wooten") constitutional and tort claims against them. Wooten alleges she was denied procedural due process when she was expelled from her high school's softball program "prior to being given notice of the charges against her, an explanation of the evidence against her, and a right to respond." Wooten also claims that in the process of terminating her from the team, Coach Stout, inter alia, defamed her and violated her privacy rights. The Court GRANTS Defendants' motion to dismiss Wooten's procedural due process claim, intentional infliction of emotional distress claim, prima facie tort claim, violation of privacy claim and defamation claim. The Court DENIES Wooten's motion for a de novo hearing.

## I. FACTS

Wooten, a senior at Pleasant Hope High School, played for the high school's softball team

and planned to go to college on a softball scholarship. On September 25, 1998, shortly before the end of her senior softball season, Wooten failed to appear for a game. Coach Stout inquired of the other softball players why Wooten was not present and one team member stated that she had heard that Wooten was attending the homecoming of another school. After discussing the situation with Wooten's team members, Coach Stout announced to the team that Wooten was no longer a member of the softball team.

Wooten learned that she had been expelled from the team the following morning when she was told by the mother of another student. On the following Monday, Wooten and her parents met with Superintendent Slagle, Principal Blackburn and Coach Stout to discuss her expulsion from the team. Wooten explained that she missed the game because she was running an errand for her mother. During the meeting, Coach Stout allegedly told Wooten that the other softball team members did not want her on the team, leading Wooten to surmise that, if she was reinstated, her return was unlikely to be warmly received by her teammates. Wooten, relying on Coach Stout's statement, indicated that she did not wish to be reinstated to the team. Wooten claims that Coach Stout's statement was incorrect and that her fellow team members did not indicate that they did not want her to resume playing for the team.

Approximately a month after this meeting, Wooten requested, pursuant to board policy, that the Board of Education hold a meeting regarding her expulsion from the softball team. When Wooten's request for a hearing was denied, she appealed and Superintendent Slagle and Principal Blackburn responded, stating that no hearing was necessary because Wooten waived her right to reinstatement at the September meeting.

Wooten has since graduated and currently attends Missouri Valley College on various softball

scholarships.[1] She filed this Complaint on or about June 9, 2000, claiming that the Defendants' actions caused her physical and psychological injury, caused her to incur medical expenses for treatment of these injuries, caused her to lose income, and caused her to lose the enjoyment of life and the enjoyment of competing effectively in softball.

## II. STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs Defendants' motion to dismiss. The Court will not consider any matters outside the pleadings. To succeed on their motion, Defendants must establish that Wooten can prove no set of facts in support of her claims that would entitle her to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957); May v. Comm'r of Internal Revenue, 752 F.2d 1301, 1303 (8th Cir. 1985); Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982). The Court must assume that the allegations in Plaintiff's complaint are true, and further, must construe those allegations in Plaintiff's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); May, 752 F.2d at 1303. The issue is not whether Wooten will ultimately prevail, but rather whether she is entitled to offer evidence in support of her claims. See Scheuer, 416 U.S. at 236, 94 S. Ct. at 1686.

## III. DISCUSSION

**A.     Due Process Violations**

Wooten's claim that Defendants violated her Fourteenth Amendment procedural due process right is brought pursuant to 42 U.S.C. § 1983. Section 1983 provides, in part, that:

---

[1] Wooten's complaint states that "[i]f her [psychological] condition does not improve plaintiff will lose scholarships to Missouri Valley College worth in excess of $20,000 because she is no longer able to play effectively on the college team." The Court interprets this to mean that at the time the Complaint was drafted Wooten was a member of the Missouri Valley College softball team and was the recipient of several softball scholarships.

3

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

A school district is considered a "person" for purposes of § 1983 liability. See Stephenson v. Davenport Community Sch. Dist., 110 F.3d 1303, 1306 n.2 (8th Cir. 1997) (citing Keckeisen v. Independent Sch. Dist., 612, 509 F.2d 1062, 1065 (8th Cir. 1975), cert. denied, 423 U.S. 833, 96 S. Ct. 57, 46 L. Ed. 2d 51 (1975)).

To establish a procedural due process violation, a plaintiff must first establish that a protected liberty or property interest is at stake. See Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1456 (8th Cir. 1996). To have a property interest in a benefit or position a person must have more than a unilateral expectation of it; the person must have a legitimate claim of entitlement to it. See Belton v. Board of Police Comm'rs. of Kansas City, 708 S.W.2d 131, 136-37 (Mo. 1986) (en banc). Property interests are not created by the Constitution -- they are created and delineated by existing rules or understandings that stem from state law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985); see also Bishop v. Wood, 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976) (finding that property interests are defined by state law)).

Once the plaintiff establishes that a property interest exists, she must then demonstrate that the defendant deprived her of this interest without due process of law. See Marler, 102 F.3d at 1456. The extent of the due process required by the United States Constitution is largely determined by the importance of the alleged deprivation. The Supreme Court directs courts to employ a balancing test in which the private interests, the governmental interests, and the likely value of

additional procedural safeguards are weighed against each other to determine what due process is constitutionally necessary. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

It is well-established that a student's entitlement to public education is a protected property interest that may not be not be interfered with until minimal due process requirements are satisfied. See Goss v. Lopez, 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). Although the right to attend school and receive an education is a legitimate property interest, not every single component of the educational process creates a property interest subject to constitutional protection. See Haverkamp v. Unified Sch. Dist. No. 380, 689 F. Supp. 1055, 1057 (D. Kan. 1986) (citing Albach v. Odle, 531 F.2d 983, 985 (10th Cir. 1976)).

The prevailing view in most jurisdictions is that no federally-protected property interest exists in a student's participation in extracurricular activities. See L.P.M. v. Sch. Bd., 753 So. 2d 130, 132-33 (Fla. Dist. Ct. App. 2000) (finding that "[a]lthough there is some authority to the contrary, the prevailing view in the country is that no such federally[-]protected property interest exists"); see also, Haverkamp, 689 F. Supp. at 1057 (observing that "[t]he majority of cases discussing interscholastic athletics and other extracurricular activities have rejected the existence of a federally-protected property right").

Several courts have held to the contrary, however, concluding that students have constitutionally-protected interests in extracurricular activities such as athletic programs. Some courts find it significant that a student's participation in interscholastic athletics can lead to lucrative professional opportunities. One Arkansas court reasoned that because a student's status as a member of an athletic team can be "very important to [the student's] development educationally and

5

economically in the future" the "privilege of participating in interscholastic athletics must be deemed a property interest protected by the due process clause." Boyd v. Bd. of Dirs, 612 F. Supp. 86, 93 (E.D. Ark. 1985). Other courts view interscholastic athletics as an integral part of the total education process and find that the denial of this right may implicate constitutional violations. See Palmer v. Merluzzi, 868 F. 2d 90, 98-99 (3rd Cir. 1989). In Palmer, the Third Circuit found that the defendant school's football program was an integral part of its educational program and implicitly acknowledged that students have a property interest in extracurricular activities. See id. at 99. The Palmer court found, however, that the due process hearing the student had been given prior to his 10-day academic suspension was sufficient to also satisfy the minimal due process requirements of his 60-day extracurricular suspension, and that a separate hearing was not constitutionally required.

The Eighth Circuit has not directly addressed this issue. A recent Eighth Circuit opinion stated, however, that "there is no clearly established right of parents to have their children compete in interscholastic athletics." McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1211 (8th Cir. 1992). In McFarlin, plaintiff parents alleged, inter alia, that the defendant school district deprived their daughter of due process and equal protection by removing her from the high school basketball team without providing a hearing. See id. The court found that the case was moot as far as preliminary relief was concerned because the student had already graduated high school. See id. Yet, the court stated that the plaintiff parents could advance a damages claim on behalf of their daughter against the defendants, for allegedly depriving the student of her civil rights. See id.

Citing McFarlin, Wooten argues that by remanding the case, the Eighth Circuit implicitly recognized that a student has a property interest in extracurricular activities. At least one district court within the Eighth Circuit, however, has found otherwise and interpreted the McFarlin

6

court's statement as the circuit's endorsement of the majority view -- that there is no federally-protected interest in a student's participation in extracurricular activities. See Peterson ex rel. Peterson v. Independent Sch. Dist. No. 811, 999 F. Supp. 665, 674 (D. Minn. 1998).

In Peterson, the plaintiff argued that the school board retaliated against him for appealing his expulsion by extending his ban from extracurricular activities. See id. The Peterson court acknowledged that more than twenty years earlier a Minnesota district court held, in Behagen v. Intercollegiate Conference of Faculty Representatives, that participation in intercollegiate athletics was a legitimate property interest. See id. (citing 346 F. Supp. 602 (D. Minn. 1972)). Distinguishing Behagen, the Peterson court explained that the plaintiff student in Behagen was "a member of the University of Minnesota basketball team and the possibility of a professional basketball career was of such substantial economic value that a property interest was found to exist." Id. Quoting McFarlin, the Peterson court held that because students generally have no property interests in extracurricular activities, no due process is required before they are excluded from them. See id. Finding the majority view persuasive, the Court agrees with the Peterson court that students do not have a cognizable property interest in extracurricular activities. See Davenport by Davenport v. Randolph County Bd. of Educ., 730 F.2d 1395, 1397 (11th Cir. 1984); Hebert v. Ventetuolo, 638 F.2d 5, 6 (1st Cir. 1981); Walsh v. Louisiana High Sch. Athletic Ass'n, 616 F.2d 152, 159 (5th Cir. 1980), cert. denied, 449 U.S. 1124, 101 S. Ct. 939, 67 L. Ed. 2d 109 (1981).

Wooten argues, however, that cases like Peterson, which hold that students have no property interest in extracurricular activities, are distinguishable from the present case because they do not involve school districts "where the local school board had adopted specific policies encouraging and

7

protecting the student's right to participate." Wooten asserts that Pleasant Hope has adopted policies that give students a legally cognizable interest in participating in extracurricular activities. Specifically, she directs the Court's attention to portions of the Pleasant Hope Student-Parent Handbook ("Handbook") that discuss a discipline policy which encompasses discipline in extracurricular activities. She also asserts that other passages of the Handbook establish that participation in extracurricular activities is an integral part of the educational process.

Despite Wooten's attempt to factually distinguish the plethora of cases holding that no property interest exists, the Court finds that Wooten did not have a property interest in her participation on the softball team. Having reviewed the Handbook passages, the Court disagrees with Wooten's assertions as to what they establish. That Pleasant Hope encourages its students to participate in extracurricular activities does not mean that students have an unqualified right to be a member of specific team, club or group. Notably, none of the Handbook passages discussing disciplinary action limits a coach's ability to train or punish the athletes for whom he is responsible. The Court recognizes that coaches must have discretionary decision-making authority to act in the best interests of the team, even if that has a negative effect on an individual team member. Accordingly, without explicit Handbook language stating that students have a protected right to participate in extracurricular activities, the Court declines to find that such a right exists.

Even assuming arguendo, that the school handbook creates a recognizable property interest, the Court finds that Wooten was afforded sufficient due process in the form of a post-termination meeting with school administrators. In Goss v. Lopez, the Supreme Court held that a student facing academic suspension must be given some kind of notice of the charges against her and the opportunity to present her side of the story. 419 U.S. at 581. The procedural requisites to a short

8

suspension from school are minimal; students are entitled only to "rudimentary safeguards." Peterson v. Independent Sch. Dist. No. 811, 999 F. Supp. 665, 673 (D. Minn. 1998) (citing Bystrom ex rel. Bystrom v. Fridley High Sch., 686 F. Supp. 1387, 1394 (D. Minn 1987) aff'd, 855 F.2d 855 (8th Cir. 1998). The Court concludes that the meeting between Wooten, her parents, Superintendent Slagle, Principal Blackburn, and Coach Stout, held three days after Wooten was terminated from the team, gave Wooten notice of the charges against her and the opportunity to present her side of the story.

The Court recognizes that it must proceed with caution when asked to intrude upon the operations of public school systems. See Stephenson v. Davenport Community Sch. Dist., 110 F.3d 1303, 1306 n.2 (8th Cir. 1997) (citing Keckeisen v. Independent Sch. Dist. 612, 509 F.2d 1062, 1065 (8th Cir. 1975), cert. denied, 423 U.S. 833, 96 S. Ct. 57, 46 L. Ed. 2d 51 (1975)). Without unequivocal direction from the Eighth Circuit, this Court is reluctant to embroil itself in the day-to-day decisions of teachers, coaches and school administrators. For the foregoing reasons, the Court holds that Wooten fails to state claim for procedural due process violations.

Wooten requests that the Court reject supplemental jurisdiction over Wooten's remaining state claims if her federal procedural due process cause of action is dismissed. A district court has discretion to reject supplemental jurisdiction over state claims where the court has already "dismissed all claims over which it has original jurisdiction." Krispin v. May Dept. Stores Co., 218 F.3d 919, 925 (8th Cir. 2000) (quoting 28 U.S.C. § 1367(c)(3)). The Court finds, however, that exercising supplemental jurisdiction over Wooten's remaining claims will conserve judicial resources and afford the parties a speedy and just resolution of the case. Hence, the Court, in its discretion, will DENY Wooten's request.

**B.    Intentional Infliction of Emotional Distress**

Wooten asserts that Coach Stout acted intentionally or recklessly in: (1) expelling Wooten from the team; (2) consulting and involving Wooten's teammates in the decision; (3) announcing the disciplinary action which had been taken against Wooten to her team members and members of the public; (4) failing to tell Wooten of the disciplinary action and allowing her to be informed by others; and (5) failing and refusing to investigate whether Wooten had missed the game to go to another school's homecoming. Under Missouri law, the elements of the tort of intentional infliction of emotional distress are: 1) defendant's conduct was extreme and outrageous; 2) defendant acted in an intentional or reckless manner; and 3) defendant's conduct resulted in severe emotional distress. See Miller v. Wackenhut Servs., Inc., 808 F. Supp. 697, 700-01 (W.D. Mo. 1992) (citing Hendrix v. Wainwright Industs., 755 S.W.2d 411, 412 (Mo. Ct. App. 1988)). The conduct alleged must be so outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hendrix, 755 S.W.2d at 412 (citing Pretsky v. Southwestern Bell Tel. Co., 396 S.W.2d 566, 569 (Mo. 1965) (en banc)). "Mere insults, indignities, inconsiderations or petty oppression do not rise to the level of outrageous conduct." Evans v. Six Flags, 613 F. Supp. 219, 220 (E.D. Mo. 1985).

The Court finds that Wooten's intentional infliction of emotional distress claim must fail as a matter of law. The Court agrees with Defendants that the issue of whether Coach Stout's conduct is shocking or atrocious is not reasonably debatable. If anything, the Court would hazard a guess that other coaches across the country have disciplined their student athletes in a similar manner, with the blessings of the school and the community. Accordingly, Court finds that Wooten fails to state a claim for intentional infliction of emotional distress.

**C.     Prima Facie Tort**

According to Wooten, Coach Stout's intentional acts, as described in section B, also provide a basis for a prima facie tort cause of action. The four elements of a prima facie tort cause of action are: (1) an intentional lawful act; (2) intent to injure; (3) injury and (4) an absence of justification or insufficient justification for the act. See Killion v. Bank Midwest, 987 S.W.2d 801, 808 (Mo. Ct. App. 1998) (citing Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 315 (Mo. 1993) (en banc). Not every intentionally-caused harm merits a tort remedy. See id. Under the balancing of interests test, the court must weigh the conflicting interests of the parties to the litigation in light of the social and economic interests of society. See id. Essentially, the court must balance "the bad motivation of the defendant against the claimed justification for the act." Porter v. Crawford & Co., 611 S.W.2d 265, 270 (Mo. Ct. App. 1980). Additionally, the Court observes that Missouri courts do not look favorably upon the theory of prima facie tort. The Missouri Court of Appeals for the Western District of Missouri has acknowledged: "Since its inception, the Missouri appellate courts have not treated the prima facie tort action kindly." Riley v. Riley, 847 S.W.2d 86, 87 (Mo. Ct. App. 1992); see also Boatmen's Bank of Butler v. Berwald, 752 S.W.2d 829, 833 (Mo. Ct. App. 1988) (reversing jury verdict and noting that Missouri courts have "significantly limited" availability of remedy).

The Court finds that Wooten's claim for prima facie tort must fail as a matter of law. First, the Court concludes that because Wooten failed to attend the game and notify her Coach that she would not be in attendance, Coach Stout was justified in disciplining Wooten in the manner in which she did. Second, the Court finds that Coach Stout did not harbor a malicious motivation and legitimately believed she was acting in the best interests of the team in expelling Wooten. The Court concludes that society would not benefit from the establishment of a cause of action that would allow student athletes to litigate and second-guess the management strategies of their coaches. For the

11

foregoing reasons, the Court concludes that Wooten has failed to state a prima facie tort cause of action.

**D.	Invasion of Privacy**

Wooton claims that Coach Stout violated Wooten's right to privacy in her education and disciplinary records by disclosing to the general public that Wooten had been expelled from the team because she missed a game to go to another school's homecoming. Since the early twentieth century, Missouri has recognized a cause of action for an "invasion of privacy." See Munden v. Harris, 134 S.W. 1076, 1081 (Mo. Ct. App. 1911). From this general right of privacy comes four potential causes of action in tort: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's likeness; (3) unreasonable publication of another's private life; and (4) publicity that unreasonably places another in false light. See Sofka v. Thal, 662 S.W.2d 502, 510 (Mo. 1983) (en banc).

Wooten's claim failed to specify upon which of the four invasion of privacy interests her cause of action rested. In order to rule on this point, the Court will assume the specific action envisioned is the tort described above in number three, the public disclosure of private facts. "This tort contains the following elements: 1) publication or publicity, 2) absent any waiver or privilege, 3) of private matters in which the public has no legitimate interests, 4) so as to bring shame or humiliation to a person of ordinary sensibilities." Balke v. Ream, 2000 WL 1575268, *5 (Mo. Ct. App. Oct 24, 2000) (citing Childs v. Williams, 825 S.W.2d 4, 7 (Mo. Ct. App. 1992)).

The tort of invasion of privacy by public disclosure of a private matter requires that the fact disclosed must be a "private matter" in which the public has no legitimate concern. Y.G. v. Jewish Hosp. of St. Louis, 795 S.W.2d 488, 499-500 (Mo. Ct. App. 1990). "It is clear that where the

operation of laws and the activities of the police or other public bodies are involved, the matter is within the public interest. Where, however, events occur which affect the individual alone, and do not touch the sphere of public concern, they are not within the public interest." Id. Furthermore,

> even though a matter is not within the public interest, the fact that it is wrongly publicized does not automatically point to an invasion of privacy. There must be substantial evidence tending to show a serious, unreasonable, unwarranted and offensive interference with the individual's private affairs. Missouri courts frequently interpret this requirement as meaning that the plaintiff cannot recover unless the publication is such that the defendant should realize that a person of reasonable sensibilities would be humiliated.

Buller v. Pulitzer Pub. Co., 684 S.W.2d 473, 482 (Mo. Ct. App. 1984).

The Court finds that Wooten's invasion of privacy by public disclosure claim fails as a matter of law. First, the Court finds that Wooten's failure to attend the game was a matter within the public interest because it affected her teammates and, potentially, the success and reputation of Wooten's team. Second, Wooten fails to allege facts showing that a person of reasonable sensibilities would be shamed or humiliated by Coach Stout's statements that Wooten missed a softball game to go to another school's homecoming. For the foregoing reasons, the Court holds that Wooten fails to state a claim for public disclosure of private facts.

Even assuming that Wooten's privacy cause of action is premised upon the tort of false light, her claim for relief would still fail. According to the Restatement (Second) of Torts, § 652E:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter, and the false light in which the other would be placed.

Restatement (Second) of Torts, § 652E. The Missouri Supreme Court is hesitant to recognize a tort

13

for false light invasion of privacy separate from defamation. See Sullivan v. Pulitzer Broadcasting Co., 709 S.W.2d 475, 481 (Mo. 1986) (en banc). The Sullivan court found that the plaintiff should not be allowed to plead a separate tort essentially duplicative of the her defamation claim. See id. Other Missouri courts have also held that an action alleging damages based upon untrue statements sounds in defamation, not invasion of privacy. See, e.g., Henry v. Taft Television and Radio Co., Inc., 774 S.W.2d 889 (Mo. Ct. App. 1989).

In the present case, Woooten's privacy claim is premised upon Coach Stout's statements to Wooten's teammates and the general public that Wooten missed the game to attend another school's homecoming, and that she was expelled from the team because she had done so. Wooten has plead a defamation claim based upon the very same facts. Adopting the reasoning of the Missouri Supreme Court in Sullivan, the Court finds that Wooten should not be allowed to plead a separate privacy tort that is duplicative of her defamation claim. Accordingly, the Court holds that Wooten's violation of privacy claim must fail as a matter of law.

**E.    Defamation**

Wooten asserts that Coach Stout's statements to Wooten's teammates and the general public that Wooten missed the game to attend another school's homecoming, and was expelled from the team because she had done so, were false and defamatory. Missouri courts explain that a "communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Henry v. Halliburton, 690 S.W.2d 775, 779 (Mo. 1985) (en banc).

Societal needs dictate, however, that certain types of communications will enjoy a qualified privilege. A communication is qualifiedly privileged when "it is made in good faith upon any

14

subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty." Rice v. Hodapp, 919 S.W.2d 240, 244 (Mo. 1996) (en banc); see also Hester v. Barnett, 723 S.W.2d 544, 560 (Mo. Ct. App. 1987) (finding that statements to congregation from the pulpit may be privileged). The determination of whether such a privilege applies is a question of law for the courts to decide. See Rucker v. Kmart Corp.,734 S.W.2d 533, 535 (Mo. Ct. App. 1987) (holding that "a communication to law enforcement officers for the purpose of helping bring a criminal to justice is qualifiedly privileged"). In the present case, the Court holds that coaches are clothed with a qualified privilege to make statements regarding their players. See Iacco v. Bohannon, 245 N.W.2d 791, 792-93 (Mich. Ct. App. 1976) (finding that high school coaches have a "duty to criticize the actions of the players with respect to their performance as members of the team and to act in a fashion which would promote maximum team effort").

Once a court has determined that the defense of qualified privilege is available, the "plaintiff bears the burden of establishing express malice to overcome the defense." Rucker, 734 S.W.2d at 535. The Missouri Supreme Court has elaborated upon this burden as follows:

> To overcome the qualified privilege the plaintiff has to prove malice-in-fact that is, that the defendant was actuated by ill-will in what he did and said with a design to causelessly or wantonly injure the plaintiff. In Minter [v. Bradstreet Co., 174 Mo. 444, 73 S.W. 668 (1903)], this Court stated that a plaintiff had to prove malice, which meant 'that the report in question was prepared and published, not in good faith, but with an intent to injure plaintiffs, or with a willful and wanton neglect of the rights and interests of the plaintiffs.' Merely proving negligence does not satisfy the malice requirement because negligence does not constitute willfulness, reckless disregard of others' rights or actual presence of an improper motive to injure.

McDowell v. Credit Bureaus of Southeast Mo., Inc., 747 S.W.2d 630, 632 (Mo. 1988) (en banc). Wooten has failed to show that Coach Stout acted with reckless disregard for the truth when she

15

stated that Wooten had missed the game to attend another school's homecoming. The undisputed evidence is that one of Wooten's fellow team members indicated to Coach Stout that Wooten was absent from the game because she was attending another school's homecoming. It was perfectly reasonable for Coach Stout to rely upon this information. Because Wooten has failed to show that Coach Stout had a high degree of awareness that her statements regarding the reason for Wooten's absence were false, Wooten has failed to demonstrate actual malice and her defamation claim must fail as a matter of law.

**F.    Wooten's Right to De Novo Review**

Wooten argues that she is entitled to de novo review pursuant to Missouri Revised Statute § 536.150. Uncontested cases for which no other method of judicial review is provided are subject to judicial review under § 536.150 of the Administrative Procedure and Review Act. See Barry Serv. Agency Co. v. Manning, 891 S.W.2d 882, 887 (Mo. Ct. App. 1995). That section provides:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion;but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

Mo. Rev. Stat. § 536.150.

The Court holds that Wooten's claims are not governed by § 536.150. Section 536.150 does

not authorize de novo judicial review where no property interest exists.  See Mosley v. Members of the Civil Service Bd., 23 S.W.3d 855, 859 (Mo. Ct. App. 2000) (stating that "[b]ecause at-will employees may lawfully be fired for any reason . . . § 536.150 does not authorize judicial review of the termination of at-will employment").  Because the Court has already concluded that Wooten has no property interest in participation in extracurricular activities, Wooten is not entitled to a de novo hearing pursuant to § 536.150.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby:

DENIES Wooten's motion to remand to the state court;

GRANTS Defendants' motion to dismiss Wooten's procedural due process claim;

GRANTS Defendants' motion to dismiss Wooten's intentional infliction of emotional distress claim;

GRANTS Defendants' motion to dismiss Wooten's prima facie tort claim;

GRANTS Defendants' motion to dismiss Wooten's violation of privacy claim;

GRANTS Defendants' motion to dismiss Wooten's defamation claim; and

DENIES Wooten's motion for a de novo hearing.

The Court notes that all of Wooten's claims have been dismissed.  Therefore, this case is ordered closed and the costs assessed to Wooten.

IT IS SO ORDERED.

/s/ DEAN WHIPPLE
Dean Whipple
United States District Court

Date: November 28, 2000

18